GUTIERREZ V. STATE

NO. 07-99-0402-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

MAY 25, 2000

______________________________

JOE HERNANDEZ GUTIERREZ, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_________________________________

FROM THE 9
TH
 DISTRICT COURT OF MONTGOMERY COUNTY;

NO. 98-09-01106-CR; HONORABLE FRED EDWARDS, JUDGE

_______________________________

Before BOYD, C.J., and QUINN and JOHNSON, JJ.

Presenting two issues which he contends demonstrate reversible error, appellant Joe Hernandez Gutierrez challenges his conviction of murder and the resulting sentence of 12 years confinement in the Institutional Division of the Department of Criminal Justice.  In his issues, appellant contends that the evidence is legally and/or factually insufficient to sustain the murder conviction and if he is guilty of any offense, it is the lesser offense of manslaughter.  We affirm the judgment of the trial court.       

To properly discuss appellant’s issues, it is necessary to recount pertinent portions of the trial evidence in some detail.  This prosecution originated because of the death of Ruth Ann Holland, appellant’s stepdaughter, who died from a gunshot wound to the back of the head.  

On the evening of September 8, 1998, a group of people were gathered at appellant’s residence drinking beer.  Appellant’s wife, Ruth Ann’s mother, went to bed at around 6:30 or 7:00 p.m.  Appellant, his nephew Samuel, and Ruth Ann continued drinking, and before long, appellant and Ruth Ann began to argue.  According to Samuel, “[i]t was mainly that for her to go home because she was drinking and everybody was already up there, and he was telling her to go home and she wouldn’t go.  She keep coming back.”

The third time Ruth Ann returned, appellant  went into the house and came out with a .410 gauge shotgun.  He fired the gun into the air while Ruth Ann was about 50 yards away. Appellant then jacked another round into the shotgun, and told Ruth Ann not to return.

At approximately 8:00 p.m., Samuel saw Ruth Ann returning.  She asked appellant if she could get another beer.  Appellant said “go ahead.”  As Ruth Ann took a beer from a refrigerator in the yard,  she and appellant began to argue.  Appellant then picked up his shotgun and came around the refrigerator one way as Ruth Ann was coming around it from the other direction, and told her to “[g]o home, go home.”  The gun fired and Ruth Ann fell to the ground on her back.

After his arrest, appellant gave the following statement:

My name is Joe Gutierrez.  I am 54 years old.  I live at 20180 Morris Street in New Caney, Texas, with my wife, Ruth Fitzgerald.  On Wednesday 9-9-98, I was at my house with my wife and step-daughter, Ruth Ann Holland.  Ruth Ann had been drinking most of the day.  I spent most of the day fixing my fishing rods and reels.  I started drinking beer at about 4:00 p.m.  I had about a six-pack.  Ruth Ann had been causing trouble all day as she does every day.  My wife told me to make Ruth Ann leave.  At about 7:00 p.m., I told Ruth Ann to leave.  Ruth Ann would not leave.  I kept telling her to leave and she would start towards the street and then come back.  I tried to push her out of the yard a couple times.  She finally walked to the street but stopped again.  I went inside and got my shotgun.  It is a 410 gauge.  I came back outside with the gun.  Ruth Ann was hollering at me.  I pointed the gun in the air and fired.  I thought I could scare her off.  She didn’t get scared and she came back.  She said she wanted to get her beer and go home.  Instead she got one beer from the refrigerator outside in the yard.  She started running her mouth again but would not go home.  She was hollering and cussing me.  I grabbed her by the arm and tried to push her to the street. She refused to leave and came back again. I picked up the shotgun and started following her around the yard.  She finally stopped at the refrigerator and got another beer.  I came around the refrigerator with the shotgun in my hand.  I had the gun in one hand pointed up in the air with my finger on the trigger.  As I came around, Ruth Ann was right in front of the refrigerator.  I stumbled on some electrical cords behind the refrigerator and reached out to grab Ruth Ann.  When I did, the gun went off and Ruth Ann was shot in the head.

I went into the house and told my wife I had just shot Ruth Ann.  She came out to be with Ruth Ann.  I drove to the gas station to report the shooting.  I then drove back home and waited for help.

My nephew, Samuel Gutierrez, was at the house the whole time.  He saw what happened.

When the officers first got there, I told them that I had threatened to shoot Ruth Ann.  What I meant was I told her I would shoot when she was standing in the road, and I fired the warning shot.  This statement was written by Detective Zenor at my request.  The statement is in my own words as I told him what to write.  It is true as best as I remember.

At the scene, appellant’s pump action shotgun was recovered, as well as one fired Remington shell.  There was also a live round found in the magazine area of the gun. The weapon did not have a hair trigger and required about five pounds of pressure to discharge it.

At the guilt-innocence phase of trial, appellant testified that on the night in question, Ruth Ann had been arguing with her mother about an upcoming divorce.  Appellant averred  he had called the police on other occasions when Ruth Ann had been “agitating” her mother, but they never came.  He explained that he fired a shot into the air hoping to scare her.  He admitted he “automatically” jacked another round into the firing chamber of the gun after firing the first shot, but said that he never intended to kill Ruth Ann and “loved her more than anything in the world.” 

Under cross-examination, appellant testified that he weighed 240 pounds and was five feet eleven inches in height.  He agreed that Ruth Ann weighed about 140 pounds and was about five feet seven inches in height.  He also admitted that when he called 911, he told the dispatcher that he had been mad at Ruth Ann. 

Appellant’s indictment charged that he “intentionally and knowingly cause[d] the death of an individual, namely: Ruth Holland, hereinafter styled the complainant, by shooting complainant with a deadly weapon, to-wit: a firearm.”  According to the Penal Code, a person who is proven to have committed the above act is guilty of murder.  
See
 Tex. Pen. Code Ann. § 19.02(b)(1).

In his first issue, appellant claims that the evidence is legally insufficient to prove that he intentionally or knowingly caused Ruth Ann’s death. The jury, as the sole judge of the weight and credibility of the evidence, was free to accept or reject any or all of the evidence of either the State or the defense.  
Vanderbilt v. State
, 629 S.W.2d 709, 716 (Tex.Crim.App. 1981).  Due process requires that appellant’s conviction be supported by evidence sufficient to rationally prove all the elements of the offense, including intent to kill, beyond a reasonable doubt.  
In re Winship
, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).  Our task, then, is to consider all the evidence and reasonable inferences in the light most favorable to the jury’s verdict and to determine whether, based upon that evidence and those inferences, a rational jury could have found beyond a reasonable doubt that appellant intended to kill Ruth Ann.  In doing so, we do not act as a thirteenth juror re-evaluating the weight and credibility of the evidence.  Rather, we act only as a safeguard to ensure the rationality of the factfinder.  
Wilkerson v. State
, 881 S.W.2d 321, 324 (Tex.Crim.App. 1994).
 
 

Intentional murder is a “result of conduct” and the relevant culpable mental states are limited to the result of an appellant’s conduct.  
Cook v. State
, 884 S.W.2d 485, 491 (Tex.Crim.App. 1994). Section 6.03(a) of the Penal Code provides that a person acts intentionally when it is his conscious objective or desire to cause the result.  Tex. Pen. Code Ann. § 6.03(a) (Vernon 1994).  Section 6.03(b) provides that a person acts knowingly when he is aware that his conduct is reasonably certain to cause the result.  Tex. Pen. Code Ann. § 6.03(b) (Vernon 1994).

The jury may infer the intent to kill from the use of a deadly weapon unless it would not be reasonable to infer that death.  
Jones v. State
, 944 S.W.2d
 
642, 647 (Tex.Crim. App. 1996).  Indeed, the Court of Criminal Appeals has said “if a deadly weapon is used in deadly manner, the inference is almost conclusive that he intended to kill.”  
Godsey v. State
, 719 S.W.2d 578, 581 (Tex.Crim.App. 1986)
.  
Even so, the presumption may be rebutted by proof that the
 
shooting was the result of an accident.  
Foster v. State
, 639 S.W.2d 691, 695 (Tex.Crim.App. 1982)
.  

To determine culpability for an offense, a jury is entitled to consider events that occurred before, during, and after the commission of the offense.  
Barron v. State
, 566 S.W.2d 929, 931 (Tex.Crim.App. 1978); 
Henderson v. State
, 825 S.W.2d 746, 749 (Tex.App.--Houston [14th
 Dist.] 1992, pet. ref’d).  Intent to kill is a fact question and may be determined by the jury from all the facts and circumstances.  The jury may also infer intent from any facts which, to their minds, prove its existence.  
McWhorter v. State
, 957 S.W.2d 928, 930 (Tex.App.--Beaumont 1997, no pet.).

Under the evidence which we have recounted above, a rational jury could reasonably have concluded that appellant had the requisite intent.  This is particularly true in view of the facts that (1) prior to the fatal shot, appellant had already fired one shot and immediately jacked another round into the chamber, (2) he kept the shotgun by his side, in firing condition, during the interval between the first shot and Ruth Ann’s final return, (3) he chased Ruth Ann around the refrigerator, and (4) he shot her in the back of the head because, as he told the 911 operator, he was mad.  The jury could also have considered it significant that the gun did not have a hair trigger and it would take some five pounds of trigger pressure to fire. In that connection, it was also within the jury’s discretion to determine the credibility of appellant’s testimony that the gun went off as he tripped.  Appellant’s first point is overruled.

 The gist of appellant’s second claim is that not only was the evidence insufficient to establish the intent element but that it was also factually insufficient to establish that the gun was used “in a manner that death or serious bodily injury would result from its use.”  In determining a factual insufficiency claim, we do not view all the evidence “in the light most favorable to the prosecution,” but may only set aside the verdict if it is “so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust.”  
Kutzner v. State
, 994 S.W.2d 180, 184 (Tex.Crim.App. 1999).  

Suffice it to say, the evidence which we have recounted above is amply sufficient to support the jury verdict.  With regard to appellant’s dangerous use contention, the fact that he was chasing Ruth Ann with a gun which had a round in the firing chamber is amply sufficient to sustain the jury’s evident conclusion that it was being used in a dangerous manner.  Appellant’s second issue is overruled.

In sum, both of appellant’s issues are overruled and the judgment of the trial court is affirmed.

John T. Boyd

Do not publish. Chief Justice